IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PRIMERICA LIFE INSURANCE COMPANY,

    Plaintiff,

v.                                                                                                              No. 1:18-cv-109-JCH-CG

CYNTHIA MONTOYA, BIANCA TRUJILLO,
and HERITAGE MEMORIAL FUNDING, LLC,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Cynthia Montoya's Motion for Summary Judgment, [ECF No. 48, filed August 6, 2018], and Defendant Bianca Trujillo's Response to Cynthia Montoya's Motion for Summary Judgment and Countermotion for Summary Judgment, [ECF No. 50, filed August 30, 2018].

**I. BACKGROUND**

This case arises from a life insurance policy ("the Policy") issued by Primerica Life Insurance Company on the life of Decedent Joseph Trujillo. The Policy designated Cynthia, Joseph's ex-wife, as the primary beneficiary and Bianca, his niece, as the contingent beneficiary.[1] After filing a complaint invoking interpleader and depositing with the Court the roughly $85,000 Policy proceeds, the Court dismissed Primerica as a party from the case. Cynthia and Bianca are the only remaining parties, and the dispute between them centers on who is entitled to the Policy's proceeds.

The parties presented the following undisputed material facts ("UMF"):

1. On June 17, 1998, Primerica issued policy no. 0431737375 to Joseph.

---

[1] The Court refers to the parties by their first names because some of the parties share a common last name.

2. The Policy is a term life insurance policy.

3. Joseph designated Cynthia, who later became his wife, as the primary beneficiary and Bianca, his niece, as the contingent beneficiary.

4. On or about July 26, 2016, Joseph and Cynthia divorced.

5. The Final Decree of Dissolution of Marriage between Joseph and Cynthia does not specifically identify or address the Policy.

6. Joseph died on March 2, 2017.

7. At the time of Joseph's death, the Policy provided $80,000 in life insurance coverage.

8. During the marriage, the premiums were paid for by community funds.

The parties dispute the following facts:

1. Following the divorce, Cynthia paid the premiums for the Policy from her individual checking account.

2. Joseph did not intend to revoke the beneficiary status of Cynthia.

## II. PROCEEDINGS

On February 2, 2018, Primerica filed a complaint invoking interpleader, seeking to pay the full Policy proceeds to the Court and be discharged, thereby permitting Cynthia and Bianca to litigate the Policy's allocation. *See* Primerica's Compl. for Interpleader, ECF No. 1. The Court granted Primerica's request for interpleader and dismissed it from the case pursuant to the parties' stipulated dismissal. *See* Corrected Mem. Op. and Order, ECF No. 39. Bianca crossclaimed against Cynthia for a determination that she is entitled to the Policy's proceeds. *See* Bianca's Answer and Crossclaim, ECF No. 23. Cynthia asserted no independent crossclaim against Bianca; however in Cynthia's answer to Bianca's crossclaim, Cynthia asked the Court to declare Cynthia the Policy's owner, primary beneficiary, and award her and the Policy's proceeds. *See* Cynthia's Answer to Crossclaim of Bianca Trujillo, ECF No. 34.

Discovery closed on October 30, 2018 and the parties had until November 29, 2018 to file pretrial motions. *See* Scheduling Order, ECF No. 25. Well in advance of the pretrial motions deadline, the parties cross-moved for summary judgment in August 2018. In her response brief filed on September 13, 2018 (still within the period for discovery) in opposition to Bianca's cross-motion, Cynthia attached the affidavit of Mr. Carlos Craine. Mr. Craine stated that that he was Joseph's partner, and that Joseph said in Mr. Craine's presence that Joseph wanted Cynthia wanted to have the money from the Policy. *See* Aff. of Carlos Craine, ECF No. 51-1 ("Craine Aff."). Cynthia represents that Mr. Craine is a disinterested third-party whose statement reflects Joseph's intent to keep Cynthia as the primary beneficiary. For her part, Bianca never challenged Mr. Craine's affidavit in any way. Nor did Bianca file a reply brief accompanying her cross-motion for summary judgment. On January 18, 2019, the parties filed a Pretrial Order indicating that this matter be tried without a jury. *See* Pretrial Order, ECF No. 54.

After recounting the relevant standard of review, the Court will conduct its analysis of the parties' cross-motions for summary judgment.

## III. STANDARD OF REVIEW

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–50 (1986). A fact is considered material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248–50. An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013). "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted

if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1143-44 (10th Cir. 2013).

The party opposing summary judgment cannot rest on the pleadings, but must go beyond the pleadings and "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000). The non-movant must "set forth specific facts" from which a rational trier of fact could find in the non-movant's favor, identifying those facts in the affidavits, deposition transcripts, or incorporated exhibits. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d, 664, 671 (10th Cir. 1998) (internal quotation marks omitted). The party cannot rest on ignorance of the facts, on speculation, or on unsubstantiated conclusory allegations. *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003); *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988). "A fact is 'disputed' in a summary-judgment proceeding only if there is contrary evidence or other sufficient reason to disbelieve it[.]" *Grynberg v. Total S.A.*, 538 F.3d 1336, 1345 (10th Cir. 2008).

In analyzing cross-motions for summary judgment, a court "must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 906–07 (10th Cir. 2016). "Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007).

**IV. DISCUSSION**

This case invokes the Court's diversity jurisdiction. Accordingly, the Court must apply the substantive law of New Mexico. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). As an initial matter, the parties dispute the applicability of New Mexico's revocation-on-divorce law, N.M. Stat. Ann. § 45-2-804(B)(1)(a), which provides that if one spouse makes the other the beneficiary of a nonprobate instrument, their divorce generally creates a presumption that the beneficiary designation is revoked. Cynthia seems to argue that § 45-2-804 does not apply because under New Mexico community property laws[2] the Policy became a community asset because premiums were paid with community funds from the couple's joint account. In an affidavit Cynthia stated that when the couple divorced, she and Joseph agreed that the Policy would belong to Cynthia and that she would continue to pay the premiums. *See* Aff. of Cynthia Montoya, ECF No. 48-1, ¶ 12. She stated that after divorce, she continued to pay premiums from her separate checking account. *See id*. at ¶ 13.

In essence, Cynthia argues that community property law, rather than New Mexico's statutory revocation-on-divorce provision, determines who the rightful beneficiary is, necessitating an analysis of whether § 45-2-804 provides the determinative legal framework for deciding this case.

    i.    <u>Legal Framework: Does § 45-2-804 Apply</u>?

In 1993, the New Mexico Legislature enacted § 45-2-804, the revocation-on-divorce provision, which provides that divorce revokes existing revocable dispositions or appointment of property made by a divorced person to his or her former spouse, stating in relevant part that:

---

[2] Community property is defined as "property acquired by either or both spouses during marriage which is not separate property." N.M. Stat. Ann. § 40-3-8(B).

5

> B. Except as provided by the express terms of a governing instrument, a court order or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce or annulment, the divorce or annulment of a marriage:
>    (1) revokes any revocable:
>       (a) disposition or appointment of property made by a divorced individual to the former spouse in a governing instrument ….

§ 45-2-804(B)(1)(a).

"[G]overning instrument" refers to an "instrument executed by the divorced individual before the divorce or annulment of the divorced individual's marriage to the former spouse," *id*. at § 45-2-804(A)(4) and includes an "insurance or annuity policy." *Id*. at § 45-1-201(20). "[D]isposition or appointment of property" includes "a transfer of an item of property or any other benefit to a beneficiary designated in a revocable trust or other governing instrument." *Id*. at § 45-2-804(A)(1).

Community property law does not control the disposition of the Policy because the Policy was a nonprobate transfer whose beneficiary designation Joseph was entitled to revoke. The beneficiary designation in a life insurance policy is a "revocable" disposition. A "revocable" disposition is one that, "with respect to a disposition, appointment, provision, or nomination," "the divorced individual, at the time of the divorce ... was alone empowered, by law or under the governing instrument, to revoke or cancel the designation in favor of the former spouse …." *Id*. at § 45-2-804(A)(6). Cynthia has provided no evidence or relevant arguments that under community property laws the Policy was a probate community property asset over which Cynthia had testamentary power of disposition. The Policy belonged to Joseph. This is clear from the face of the Policy, which is in the summary judgment evidentiary record. In the "Definitions" and "General Provisions" section the Policy states that it "belongs to [the owner of the policy]," and

that in turn the owner of the policy "is the Insured." Primerica Policy, ECF No. 50-1 at 8.[3] The owner of the Policy "[has] all rights described in this Policy," including ability to change the designated beneficiary. *See id.* at 8, 9. Cynthia has provided no evidence that Joseph was prohibited by law or under the Policy from canceling or changing the beneficiary designations. The consequence of the New Mexico Legislature's adoption of § 45-2-804 was to expand revocation-on-divorce to cover nonprobate transfers, such as the life insurance beneficiary designation at issue here. *See* § 45-1-201(20). Accordingly, § 45-2-804(B)(1)(a) applies to this dispute and revoked the beneficiary disposition Joseph made before divorce to Cynthia.

    ii.    <u>Has Cynthia Rebutted the Presumption that Divorce Revoked Her Beneficiary Designation</u>?

Having determined that § 45-2-804 applies, the Court next examines the statute's effect. New Mexico's courts have not addressed whether under § 45-2-804 divorce absolutely revokes a beneficiary designation to a former spouse or whether divorce creates a presumption of revocation that may be rebutted. In 2016, this Court made a predictive guess under *Eerie* that New Mexico's courts would construe § 45-2-804 to conform to the latter view, *i.e.*, that divorce presumptively revokes a designation of a former spouse as beneficiary, but that presumption can be rebutted.[4] *See*

---

[3] The Court references the pages numbers imprinted by the Court's Electronic Case Filings header.

[4] In *Guerrero*, the Court framed the legal question as: "[D]oes § 45-2-804 create a bright line rule requiring revocation of a beneficiary designation upon divorce, or does it merely create a rebuttable presumption that the donor intended revocation and [] if § 45-2-804 creates a rebuttable presumption, what amount of proof is required to rebut it?"

To date, this Court's holding in *Guerrero* that § 45-2-804 creates a rebuttable presumption of revocation has not been repudiated by the New Mexico appellate courts because the State's courts have not weighed in on the issue. *Guerrero* remains the only interpretative guidance of the statute. In performing an *Eerie* analysis where the State's laws are silent, due respect is given to federal district court decisions interpreting the law of the State in question. *See Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665–66 (10th Cir. 2007).

*Lincoln Benefit Life Co. v. Guerrero*, No. 14-1077 JCH/WPL, 2016 WL 4547157, at *6 (D.N.M. June 27, 2016) (Herrera, J.). The Court arrived at this conclusion after extensively canvassing relevant legal authority in determining what acts by a decedent donor are sufficient to demonstrate that the donor intended to keep his or her ex-spouse as beneficiary. *Id*. at *3-6. The Court distilled some key principles from persuasive authority: First, inaction by the decedent donor (such as not updating a life insurance policy to remove an ex-spouse as a beneficiary) is insufficient to carry the would-be beneficiary's burden of proof. *Id*. at *7. This is because following divorce, a person's failure to remove a beneficiary designation in favor of an ex-spouse is likely a result of "inattention rather than intention." *Id*. at *4 (quoting *Stillman v. Teachers Ins. and Annuity Ass'n College Retirement Equities Fund*, 343 F.3d 1311, 1317-18 (10th Cir. 2003) (stating that "when spouses are sufficiently unhappy with each other that they obtain a divorce, neither is likely to want to transfer his or her property to the survivor on death.")). Second, self-serving statements made by the decedent only to the beneficiary and not witnessed by any other person are also insufficient. *Guerrero*, 2016 WL 4547157 at *7.

On the other hand, the putative beneficiary can meet her burden, by a preponderance of the evidence, either by providing a writing from the decedent in compliance with the terms of the life insurance policy, or by presenting an admissible statement of the decedent's intent made to a third-party with no interest in the beneficiary designation.[5] *Id*. At all times the overriding goal under New Mexico's Uniform Probate Code is to "discover and make effective the intent of a decedent." N.M. Stat. Ann. § 45-1-102(B)(2).

---

[5] Neither party argues that Joseph provided a writing in compliance with the life insurance policy evincing his intent to keep Cynthia as the beneficiary, and thus that method of proof is inapplicable to this dispute.

Applying these principles in *Guerrero*, the Court held that the ex-wife failed to rebut the statutory presumption under § 45-2-804 that divorce revoked her beneficiary designation under her ex-husband's life insurance policy. *Id*. The ex-wife submitting her own affidavit statement that her dead ex-husband verbally told her that he wished to retain her as the beneficiary out of his love for her. *Id*. The Court explained that a would-be beneficiary *could* carry her burden of proof to rebut the revocation-on-divorce presumption by pointing to the donor's oral statements expressing his or her intent. *Id*. But the Court explained that such statements, at the risk of being self-serving, must be received cautiously. *Id*. In *Guerrero*, the ex-wife's affidavit statement was impermissibly self-serving because there was no evidence that the decedent made that statement to or in the presence of a disinterested third-party, such as an insurance agent. *Id*. Citing *Am. Gen. Life Ins. Co. v. Jenson*, No. CIV. 11-5057-JLV, 2012 WL 848158, at *15 (D.S.D. Mar. 12, 2012), the Court held that "self-serving statements made by the decedent only to the beneficiary and not witnessed by any other person are insufficient because such evidence has insufficient guarantees of trustworthiness to carry the day." *Id*. (internal quotation marks omitted).

By way of contrast, in *Jenson*, 2012 WL 848158, at *15, the court held that a financial planner's deposition statement that the decedent told the financial planner that he wished for his ex-wife to remain as the beneficiary sufficiently rebutted South Dakota's revocation-on-divorce statute. The court held that the decedent's oral statements to the financial planner were admissible under Fed. R. Evid. 803(3)[6] as a reliable statement of a then-existing state of mind to show intent and that the financial planner was a "neutral third-party who had no interest in" the beneficiary

---

[6] Rule 803(3) excepts from the rule against hearsay "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) …." Fed. R. Evid. 803(3).

designation. *Id*. Aside from the statement to the financial planner, the following additional proof demonstrated that the decedent intended his ex-wife to remain the beneficiary on his life insurance policy: (1) after divorce, the couple continued to co-habitat and remained together as a couple; (2) the ex-wife affirmatively re-designated the decedent as the beneficiary on *her* life insurance, showing the couple wanted to have a "mirror-image life insurance policies;" (3) the decedent was unaware of the effect of the revocation-upon-divorce law since neither his financial planner or his policy explained the consequence of divorce. *Id*. at *16. The court held that these additional facts rebutted the presumption of revocation and granted the ex-wife's motion for summary judgment that she was entitled to the life insurance policy proceeds. *Id*.

Likewise, in *State Farm Life Ins. Co. v. Davis*, No. 3:07-cv-00164 JWS, 2008 WL 2326323, at *5 (D. Alaska June 3, 2008), the court held that the decedent's post-divorce oral statement to his insurance agent that he wished for his former wife to remain as the beneficiary sufficiently rebutted Alaska's revocation-on-divorce statute. Unlike in *Jenson*, this oral statement was the sole evidence of the decedent's intent. *Id*. at *4. On this evidence alone, the court declared the ex-wife as a beneficiary as a matter of law *Id*. at *5. In other words, no genuine issues of material fact arose as to the insurance agent's status as a disinterested person.

Turning to the case at hand, the Court recognizes that the purpose of the governing law is to "discover and make effective the intent of a decedent," N.M. Stat. Ann. § 45-1-102(B)(2), and that Cynthia carries the burden of proof, by a preponderance of the evidence, to demonstrate that Joseph intended to maintain Cynthia as beneficiary on the Policy. *See Guerrero*, 2016 WL 4547157 at *6. In her response brief in support of her motion for summary judgment, Cynthia submitted the affidavit of Mr. Carlos Craine, who made three relevant statements: (1) he was Joseph's "partner;" (2) that "after the divorce Cynthia and Joseph remained in constant contact

and were very much a couple in love;" and that (3) "Joseph said in [Mr. Craine's] presence that he wanted Cynthia Montoya to have his life insurance policy money so that Cynthia could pay for his funeral expenses and be taken care of after his death." Craine Aff., ¶¶ 2, 4-5. Bianca had an opportunity to challenge Mr. Craine's affidavit. She never did so. His affidavit was filed of record on September 13, 2018, and thus was within the period for discovery ending on October 30, 2018. Bianca never deposed Mr. Craine, or even rebutted the affidavit in a reply brief. The summary judgment evidentiary record therefore contains uncontradicted evidence from a third-party that Joseph wanted Cynthia to have the policy proceeds and that the couple remained in love after divorce.[7] Under *Jenson*, the trier of fact could reasonably conclude that Mr. Craine's statements concerning Cynthia's and Joseph's continued love and Joseph's expressed Policy disposition evinced Joseph's intent to keep Cynthia as beneficiary.

However, Mr. Craine's report is insufficient to entitle Cynthia to judgment as a matter of law. His statements raise issues of fact requiring resolution by the trier of fact. Drawing reasonable inferences in Bianca's favor, as the Court must, the trier of fact could reasonably conclude that Mr. Craine's statements lack sufficient trustworthiness. There is no suggestion that Mr. Craine is a neutral financial agent as in *Jenson* or *Davis*. His affidavit simply explains that he was Joseph's "partner." Craine Aff. at ¶ 2. Yet he has been untested by cross-examination, and his affidavit fails to explain his disinterest in Cynthia's beneficiary designation or show the nature of his relationship to the parties. The Court cannot enter summary judgment in favor of Cynthia based on Mr. Craine's

---

[7] In the factual contentions section of the Pretrial Order, Bianca asserted in fact number 2(c) that Cynthia and Joseph were not close after divorce. *See* Pretrial Order at 5. However, Bianca provided no summary judgment evidence in support of this contention and therefore the trier of fact could not agree with Bianca. *See Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009) (noting that because at summary judgment the parties are beyond the pleading phase of the litigation, a party's "version of the facts must find support in the record….").

11

affidavit. To do so would be improperly deciding the cross-motions based on a credibility assessment that is reserved for the trier of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). Whether Mr. Craine is a disinterested witness is for the trier of fact to evaluate.

## V. CONCLUSION

**IT IS THEREFORE ORDERED that** Cynthia Montoya's Motion for Summary Judgment **[ECF No. 48]**, and Bianca Trujillo's Countermotion for Summary Judgment, **[ECF No. 50]** are **DENIED**.

_____
JUDITH C. HERRERA
UNITED STATES DISTRICT JUDGE